{¶ 24} Defendant-appellant, Curt Kovacic, challenges the firearm specification of his conviction for aggravated robbery on the grounds of the sufficiency of the evidence. As the majority points out, sufficiency is essentially a test of adequacy. The precise issue before this Court, then, is whether the evidence of record is adequate to support the firearm specification against the appellant. Contrary to the majority's opinion, the evidence does support the firearm specification. Therefore, I respectfully dissent.
 {¶ 25} According to R.C. 2929.14(D)(1)(a)(ii) and 2941.145, a court shall impose a mandatory three-year prison term on an offender who (1) is convicted or pleads guilty to aggravated robbery, and (2) is shown to have "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessedthe firearm, or used it to facilitate the offense." (Emphasis added.)
 {¶ 26} A "firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" including "an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). The definition of a "firearm" also contains the following provision which has been omitted from the majority's opinion: "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantialevidence, including, but not limited to, the representations and actionsof the individual exercising control over the firearm." (Emphasis added.) R.C. 2923.11(B)(2).
 {¶ 27} The two necessary elements to support a firearm specification are: (1) possession of a firearm and (2) the operability of the firearm. Significantly, the statute does not require that the firearm be seen. It is sufficient if the offender "indicate[s] that the offender possessed the firearm" or that he "use[s] it to facilitate the offense." R.C. 2929.14(D)(1)(a)(ii). Significant also is the fact that the statute expressly allows the jury to rely on circumstantial evidence to prove the specification, including "the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2).
 {¶ 28} In State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, the Ohio Supreme Court reemphasized these points when it held that in determining "whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." Id. at syllabus. The court further stated that "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. at 384.
 {¶ 29} Taking the Supreme Court's pronouncements with the unambiguous statutory provisions, it is (or should be) abundantly clear that the implicit threat to use a firearm in the commission of a robbery is sufficient evidence to support both elements of a firearm specification, regardless of whether the gun is actually seen.
 {¶ 30} In the present case, appellant entered a Duke and Duchess convenience store in Ashtabula at approximately three in the morning. Appellant asked the cashier for a pack of cigarettes. After the cashier gave appellant the cigarettes appellant asked for the money out of the cash register. The cashier responded "no way." Appellant told the cashier that he had a gun and repeated his demand for the money out of the register. Appellant was standing about two feet away from the cashier and held his right hand in his jacket pocket in such a way that there appeared to be a gun in his pocket. The cashier then gave appellant the money. While doing so, appellant grabbed the money out of the cashier's hand with his left hand while keeping his right hand on the gun that he claimed to have in his pocket. Appellant then fled the store.
 {¶ 31} Considering "all relevant facts and circumstances surrounding the crime," this evidence demonstrates an implied threat on the part of the appellant adequate to support the firearm specification.
 {¶ 32} Somehow, the majority finds no implicit threat in appellant's conduct ("appellant's actions did not amount to an implicit threat insofar as appellant's declaration did not necessarily portend danger or express a desire to inflict injury on the clerk"). This conclusion is contrary to the evidence of record. Appellant had entered a convenient store early in the morning for the purpose of robbing it. The cashier initially refused appellant's demand for money. Appellant stated that he had a gun, repeated his demand for money, and indicated the weapon's presence in his pocket. Appellant's conduct was sufficient to overcome the cashier's resistance to his demand. The cashier understood what was implied by appellant's conduct: — give me the money or I will shoot you. Cf. Thompkins, supra, at 383 (finding an implied threat in defendant's words to the cashier that this was a "holdup" and to move "quick, quick").
 {¶ 33} The majority inexplicably sees it otherwise. The majority finds that "although appellant's hand was in his pocket and he indicated he had a gun, we cannot tacitly infer . . . that he had an operable firearm." Why? "Not all guns are `firearms'. For instance, a toy water pistol can be generically defined as gun." From the totality of the circumstances in this case, however, a jury could (and, in this case, did) infer that appellant's statement and conduct indicate more than the mere possession of a toy water gun. In the context of an early morning robbery of a convenience store, where possession of a gun is visibly indicated and coupled with a demand for money, the statement "I have a gun" implies the type of a gun that is a deadly weapon capable of expelling projectiles by the action of an explosive propellant; it implies that this gun is operable; and it implies a willingness to use this gun to inflict severe bodily harm or death if a demand for money is not requited. To infer anything else is unrealistic.
 {¶ 34} Chief Justice Moyer, in his concurring opinion in State v.Murphy (1990), 49 Ohio St.3d 206, directly answers the majority's argument that "[appellant's] statement does not, as a matter of law, imply that the weapon was an operable firearm": "To the argument that a person holding a toy gun may also make such a threatening statement, I would answer that a person pointing a gun at someone to cause that person to perform an act and uttering words that indicate that the gun can cause harm is not entitled to a conclusion as a matter of law that his words mean nothing. The implication of such words is that the gun is operable and a finder of fact may reasonably conclude that such words tend to prove the gun is indeed operable." Id. at 210 (Moyer, C.J., concurring).
 {¶ 35} Moreover, both the First and Sixth Appellate Districts have found, in cases involving facts substantially similar to the present ones, that the evidence is sufficient to support the firearm specification. In State v. Haskins, 6th Dist. No. E-01-016, 2003-Ohio-70, the defendant was convicted of robbing a gas station. Defendant entered the gas station on the pretense of buying a soft drink. While the cashier rang the item up defendant demanded the money from the cash drawer. The cashier asked if defendant was joking and defendant told her "are you going to give me the money or do I have to pull this pistol out of my pocket?" The cashier gave the defendant the money from the cash drawer, but at no time did she see a gun. Id. at ¶¶ 3-4. The Sixth District upheld defendant's conviction and the firearm specification:
 {¶ 36} "In this case, appellant indicated that he would use the `pistol in my pocket' if the attendant did not give him the cash drawer money. Although no firearm was actually visible to the victim or found, the effect on the hearer was that appellant had a firearm and threatened to use it. Thus, we conclude that appellant's explicit threat, when construed most strongly in favor of the state, provides sufficient evidence from which any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * * We further conclude that, although not visible, the threat of the use of a firearm is, under Thompkins, enough for a jury to find that appellant did, in fact, have an operable firearm." Id. at ¶¶ 47-48.
 {¶ 37} Similarly, in State v. Jeffers (2001), 143 Ohio App.3d 91, the First District Court of Appeals upheld a firearm specification as supported by sufficient evidence where the gun was never visible. "In the instant case, the state provided sufficient evidence to prove the specification. The testimony indicated that Jeffers threatened to `blow [Atkinson's] head off' if she refused to give him the money. Jeffers further indicated that he possessed a firearm by the manner in which he concealed his hand in his pocket. Jeffers also used Atkinson's belief that he had a gun to effectuate his criminal purpose. Although Atkinson did not see a weapon and no weapon was recovered from Jeffers or his residence, the jury could have properly relied on circumstantial evidence in finding Jeffers guilty of the specification." Id. at 95.
 {¶ 38} Both Haskins and Jeffers are directly on point, given the facts of the present case. They stand for the proposition that all the elements of the firearm specification may be proven by circumstantial evidence and that implied threats that the offender possesses and is willing to use a firearm constitute sufficient circumstantial evidence.
 {¶ 39} The ultimate impact of the majority's opinion is both troublesome and extremely dangerous. Under the majority's analysis, to successfully obtain a firearm specification conviction, a store clerk faced with a criminal hiding his gun in his pocket would have to challenge the criminal to display the weapon (for verification that it is real and not a toy) and demonstrate its operability (the result of such demonstration being potentially fatal to the clerk). Such an approach would be contrary to the purpose behind the additional firearm specification punishment — to deter the involvement of a firearm in a crime. The majority's approach invites active involvement of a firearm in a crime as a prerequisite for conviction on a firearm specification. Even worse, the majority's approach could be misconstrued as a road map for criminals, who will seek to avoid the additional firearm specification penalty by concealing the weapon during the commission of a robbery. This, in turn, will only serve to increase the risk of harm to store clerks who unfortunately challenge such criminals because of the lack of a visible weapon.
 {¶ 40} It has been argued by some that it is sophistry to allow a gun specification to stand where the weapon is never actually seen. But that is no more dubious a proposition than to say that unless a gun is actually seen the firearm penalty can never be imposed. The former proposition, at least, has the virtue of being supported by statutory language and legal precedents. Accordingly, I dissent.